UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHAUNCEY P.,

                        Plaintiff,

              v.

ANDREW M. SAUL,[1] Commissioner of
  Social Security,

                        Defendant.
_____

**DECISION
and
ORDER**

**19-CV-06785F**
(**consent**)

APPEARANCES:        LAW OFFICES OF KENNETH R. HILLER, PLLC
                              Attorneys for Plaintiff
                              KENNETH R. HILLER, and
                              JEANNE ELIZABETH MURRAY, of Counsel
                              6000 North Bailey Avenue, Suite 1A
                              Amherst, New York  14226

                              JAMES P. KENNEDY, JR.
                              UNITED STATES ATTORNEY
                              Attorney for Defendant
                              Federal Centre
                              138 Delaware Avenue
                              Buffalo, New York  14202
                                     and
                              KATHRYN L. SMITH
                              Assistant United States Attorney, of Counsel
                              U.S. Attorney's Office
                              100 State Street
                              Rochester, New York  14614
                                     and
                            FRANCIS D. TANKARD, and
                            JENNIFER E. WHELAN
                            Special Assistant United States Attorney, of Counsel
                            Social Security Administration
                            Office of General Counsel
                            601 East 12th Street
                            Room 965
                            Kansas City, Missouri  164106

---

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

On October 14, 2019, the parties to this action, in accordance with a Standing Order, consented pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned. (Dkt. 13).  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on March 18, 2019 (Dkt. 9), and by Defendant on May 11, 2020 (Dkt.11).

## BACKGROUND

Plaintiff Chauncey P. ("Plaintiff"), brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), finding Plaintiff is no longer disabled and thus not entitled to continue receiving Social Security Disability Insurance ("SSDI"), under Title II of the Act ("disability benefits").

Plaintiff initially filed an application for disability benefits on June 30, 2008, alleging disability based on history of a gunshot wounds to the abdomen, chest, and left arm, history of colostomy, chest pain, morbid obesity, anxiety disorder and depressive disorder.  AR at 115, 117, 191, 193.[2]  In a decision dated March 26, 2010, the Commissioner found Plaintiff disabled as of June 12, 2007.  AR at 9, 117 ("benefits award decision").  The Commissioner conducted a continuing disability review ("CDR") pursuant to 20 C.F.R. § 404.1594 finding that as of June 7, 2016, Plaintiff had experienced medical improvement permitting Plaintiff to perform a limited range of light work for substantial gainful employment ("SGA"), and thus was no longer disabled.  AR at 9-15, 118-19, 128-33 ("benefits termination decision").  Plaintiff requested a hearing

---

[2] References to "AR" are to pages of the Administrative Record electronically filed by Defendant on January 20, 2020 (Dkt. 7).

before an administrative law judge ("ALJ") to challenge the benefits termination decision, AR at 134-41, and on May 8, 2018, a hearing was held via video conference before ALJ Eric Eklund ("the ALJ") in Lawrence, Massachusetts, with Plaintiff appearing *pro se* and without representation, in Buffalo, New York.  AR at 39-83.  Also appearing and testifying at the hearing was vocational expert Elaine G. Cogliano ("the V.E.").  *Id.*

On August 14, 2018, the ALJ issued a decision confirming the termination of Plaintiff's disability benefits because Plaintiff was no longer disabled.  AR at 6-20 ("the ALJ's decision"), which Plaintiff timely appealed to the Appeals Council.  On August 23, 2019, the Appeals Council issued a decision denying Plaintiff's request for review, rendering the ALJ's decision the Commissioner's final decision.  AR at 1-5.  On October 24, 2019, Plaintiff commenced the instant action seeking judicial review of the ALJ's decision.

On March 18, 2020, Plaintiff moved for judgment on the pleadings (Dkt. 9) ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 9-1) ("Plaintiff's Memorandum").  On May 11, 2020, Defendant moved for judgment on the pleadings (Dkt. 11) ("Defendant's Motion"), attaching the Commissioner's Brief in Response Pursuant to Local Civil Rule 5.5 for Social Security Cases (Dkt. 11-1) ("Defendant's Memorandum").  Filed on June 1, 2020, was Plaintiff's Reply to Commissioner's Brief in Support and in Further Support for Plaintiff's Motion for Judgement on the Pleadings (Dkt. 12) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the foregoing, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

**FACTS**[3]

Plaintiff Chauncey P. ("Plaintiff"), born October 29, 1970, Plaintiff graduated high school and attended a college nursing program but did not graduate.  AR at 52-53. Plaintiff has past relevant work ("PRW") experience as a rental agent.  AR at 14. Plaintiff was 36 years old as of June 12, 2007, his disability onset date as determined by the ALJ's March 26, 2010 benefits award decision, was 45 years old as of June 7, 2016, the date of the ALJ's benefits termination decision, and was 47 years old as of the ALJ's August 14, 2018 decision affirming the benefits termination decision.  AR at 15, 117, 118, 193.

On June 12, 2007, Plaintiff was determined to be disabled and unable to perform the requirements of even sedentary work on a sustained and competitive basis based on a history of gunshot wounds to the abdomen, chest, and left arm, history of colostomy, chest pain, morbid obesity, anxiety disorder, and depressive disorder.  AR at 115-16.  Although Plaintiff subsequently developed gynecomastia (enlargement of breast tissue in males, commonly caused by an imbalance in testosterone) with nipple sensitivity, gout, and renal insufficiency, Plaintiff's disability benefits were terminated as of June 7, 2016, based on an agency determination that Plaintiff did not develop any additional severe impairments after June 12, 2007, and that since that date, Plaintiff's depression and anxiety were no longer "severe" and the evidence did not establish Plaintiff has a severe impairment of "chest pain."  AR at 11.

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

As of the date of the administrative hearing on May 8, 2018, Plaintiff worked part time answering telephones and supervising in an office.  AR at 54.[4]

## DISCUSSION

### 1.    Standard for Termination of Disability Benefits

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A).  A determination that a claimant is eligible for disability benefits is made pursuant to a five-step analysis set forth in the applicable regulations. *Abril v. Comm'r of Soc. Security*, 2019 WL 1552022, at *1 (W.D.N.Y. Apr. 10, 2019) (citing 20 C.F.R. §§ 404.1509, 404.1520 and 416.920).  The five sequential steps include whether (1) the plaintiff is currently working; (2) the plaintiff suffers from a severe impairment; (3) the impairment is listed in 20 C.F.R. Pt. 404, Subpart P, Appendix 1; (4) the impairment prevents the plaintiff from continuing any PRW; and (5) if the impairment prevents performing PRW, whether the impairment prevents the plaintiff from performing any work existing in the national economy.  *Id.*; *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

After making an award of disability benefits the Commissioner may terminate disability benefits upon determining the impairments upon which the benefits were granted has ceased, does not exist, or is no longer disabling.  42 U.S.C. § 423(f).  A determination to terminate disability benefits must be supported by substantial evidence

---

[4] It is undisputed that Plaintiff does not earn enough at his part-time job to qualify as substantial gainful activity under the Act which would render Plaintiff financially ineligible for disability benefits.

demonstrating medical improvement in the plaintiff's impairments such that the plaintiff is able to engage in SGA.  42 U.S.C. § 423(f)(1); *see* 20 C.F.R. § 404.1594(b)(3). "Medical improvement" is defined as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled."  20 C.F.R. § 404.1594(b)(1).  Pursuant to 20 C.F.R. § 404.1594(a), the Commissioner engages in continuing disability review ("CDR"), *i.e.*, periodic review of a claimant's benefits to determine if there has been medical improvement related to the ability to perform work and, if so, whether the claimant is able to engage in substantial gainful employment and, thus, no longer disabled under the Act nor entitled to disability benefits.  *See Rodriguez v. Saul*, 2020 WL 5200691, at * 2 (W.D.N.Y. Sept. 1, 2020) (citing cases).

Although in applying for disability benefits, the plaintiff has the burden to establish disability under the Act, when considering whether to terminate benefits previously awarded, the burden is on the Commissioner to establish medical improvement permits the claimant to engage in SGA.  *See Adelman v. Berryhill*, 742 F. App'x 566, 574 (2d Cir. 2018) ("In most instances, *we* must show that you are able to engage in substantial gainful activity before your benefits are stopped." (quoting 20 C.F.R. § 404.1594(b)(5))).  The CDR employs an eight sequential steps, several of which are the same as the five sequential steps used in making an initial disability determination including

1. Whether the claimant engaged in substantial gainful activity;
2. Whether the claimant suffers from a severe impairment that equals or meets a listed impairment in the Social Security regulations;
3. Whether there has been medical improvement;
4. If there has been a medical improvement, whether it is related to the claimant's ability to do work, whether the residual functional capacity has increased;

5. If there has been no medical improvement, whether exception [*sic*] under the regulations are applicable;
6. Whether, with any medical improvement, if all current impairments in combination are severe;
7. If impairments are severe, whether the claimant can perform substantial gainful activity; and
8. If unable to perform past work, whether the claimant can do other work given their residual functional capacity.

*Fears v. Saul*, 2020 WL 562681, at *3 (W.D.N.Y. Feb. 5, 2020) (citing 20 C.F.R. § 404.1594(f)).

If the Plaintiff is found either to be disabled or not disabled at any of the eight sequential steps, the ALJ's review ceases with disability benefits continuing if the determination is disabled or terminated if the determination is not disabled.  20 C.F.R. § 404.1594(f).

**2.     Scope of Judicial Review**

A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's

findings are supported by substantial evidence.  *Id.*  "Congress has instructed . . . that

the factual findings of the Secretary,[5] if supported by substantial evidence, shall be

conclusive."  *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982).

**3.     Termination of Disability Determination**

In the instant case, the ALJ found the most recent favorable decision was the

finding Plaintiff is disabled on March 26, 2010, *i.e.*, the comparison point date ("CPD"),

AR at 10, that as of the CPD, Plaintiff had medically determinable impairments of a

history of gunshot wounds to the abdomen, chest, and left arm, history of colostomy,

chest pain, morbid obesity, anxiety disorder, and depressive disorder, which

impairments resulting in an inability to perform the requirements of even sedentary work

on a sustained and competitive basis, *id.* at 11, Plaintiff has not engage in SGA through

the date of the benefits termination decision, *id.*, the medical evidence establishes

Plaintiff did not develop any additional severe impairments after the CPD through the

date of the benefits termination decision, that Plaintiff's depression and anxiety are no

longer "severe," that Plaintiff does not have a severe impairment of "chest pain," *id.*, and

that since June 7, 2016, Plaintiff has not has an impairment or combination of

impairments meeting or medically equaling the severity of an impairment listed in 20

C.F.R. Part 404, Subpart P, Appendix 1.  *Id.* at 11-12.  As such, medical improvement

was determined to have occurred as of June 7, 2016, *id.* at 12, with Plaintiff retaining

the RFC for light work as defined in 20 C.F.R. § 404.1567(b), except that Plaintiff cannot

climb ladders, ropes, or scaffolds, or crawl, can frequently climb ramps and stairs,

---

[5] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

balance, stoop, kneel, crouch and crawl, and must avoid exposure to moving machinery and unprotected heights.  *Id.* at 12-14.  Because the Plaintiff's medical improvement resulted in an increase in his RFC, the improvement is related to Plaintiff's ability to work, *id.* at 14, since June 7, 2016, Plaintiff continues to have a severe impairment or combination of impairments specifically, gunshot wound residuals and obesity, *id.*, yet has been capable of performing his PRW as a rental agent. *id.*, as well as other work existing in significant numbers in the national economy including as an office helper, information clerk, and order desk clerk such that Plaintiff, given his age, education, and work experience has not been disabled as defined under the Act.  *Id.* at 14-15.

In support of his motion for judgment on the pleadings, Plaintiff argues the ALJ's determination that Plaintiff experienced medical improvement as of June 7, 2016 is not supported by substantial evidence, Plaintiff's Memorandum at 10-14, and the ALJ failed to properly weigh the medical evidence of record, instead basing the RFC determination on his own lay opinion rather than on substantial evidence, requiring remand.  *Id.* at 14-22.  In contrast, Defendant argues substantial evidence supports the ALJ's finding of medical improvement, Defendants' Memorandum at 14-22, as well as the ALJ's evaluation of the RFC.  *Id.* at 22-29.  In further support of his motion, Plaintiff reiterates that the ALJ's determination that Plaintiff experienced medical improvement as of June 7, 2016, is not supported by substantial evidence in the record, Plaintiff's Reply at 1-2, and the ALJ failed to properly weigh the medical opinion evidence of record, instead basing the RFC determination on the ALJ's own lay opinion.  Plaintiff's arguments are without merit.

Insofar as Plaintiff argues the ALJ's determination that Plaintiff experienced medical improvement as of June 7, 2016 is not supported by substantial evidence, Plaintiff maintains such determination is based on the ALJ's own lay interpretation of bare medical findings and conclusory statements because out of more than 700 pages of medical records, the ALJ cites to only 26 pages of treatment notes containing only raw medical evidence the ALJ is not qualified to interpret and which are not corroborated by a physician's opinion or assessment.  Plaintiff's Memorandum at 10-13. As Defendant argues, however, the ALJ's determination that Plaintiff's impairments medically improved is based on medical evidence in the record showing improvement in the symptoms, signs, and laboratory findings associated with Plaintiff's impairments. Defendant's Memorandum at 14-15.

In particular, the record does not establish Plaintiff developed any new severe impairments after the CPD, and Plaintiff does not argue otherwise.  As the ALJ explained, Plaintiff's chest pain is a symptom, not a diagnosis, and the only evidence in the record that Plaintiff continued to experience chest pain is a complaint on May 16, 2018 when Plaintiff complained of left-sided chest pain for the past month, but an X-ray showed the bullet fragments projecting over the left cardiac border were unchanged from previous X-rays, and an EKG workup revealed no pathology accounting for the pain which was determined to be non-cardiac in origin, and possibly attributed to a non-malignant small mass or cyst on Plaintiff's left breast, for which Plaintiff underwent a mammogram in August 2017 and was diagnosed with gynecomastia.  AR at 11 (citing AR at 588-598).  Hospital records also reveal Plaintiff was prescribed colchicine for gout in his right foot on November 3, 2017, AR at 578, 585, as well as cellulitis on Plaintiff's

left foot on November 13, 2017, AR at  582-85  but the medical evidence pertaining to

Plaintiff's gout diagnosis and cellulitis is scant and Plaintiff does not claim either is a

severe or even on-going impairment.

      In determining that Plaintiff's depression and anxiety are no longer severe, the

ALJ relied on evidence from consultative examiner Kristina Luna, Psy.D. ("Dr. Luna"),

dated January 25, 2016, finding Plaintiff with

> no limitations in his ability to follow and understand simple directions and
> instructions, perform simple tasks, maintain attention and concentration, maintain
> a regular schedule, learn new tasks, make appropriate decisions, relate
> adequately with others, and appropriately deal with stress.  He is mildly limited in
> his ability to perform complex tasks independently.  Difficulties are caused by
> distractibility.
>
> The results of the present evaluation appear to be consistent with psychiatric
> problems, but in and of itself, this does not appear to be significant enough to
> interfere with the claimant's ability to function on a daily basis.

AR at 288-89.

Dr. Luna's diagnosis includes unspecified obsessive-compulsive related disorder.  *Id.* at

289.  The ALJ compared Dr. Luna's findings with Plaintiff's medical records from

Rochester General Hospital ("RGH"), Unity Health System ("UHS"), and Rochester

Regional Health ("RRH") where Plaintiff received medical care from 2012 to 2018,

noting that between 2016 and 2018, Plaintiff did not make any mental health complaints

and which showed Plaintiff ceased making mental health complaints or receiving any

treatment for mental health issues.  AR at 11-12 (citing AR at 269-85, 311-25, 518-605).

This is consistent with Plaintiff's hearing testimony that he no longer saw a mental

health therapist or counselor and did not take any medications for mental health issues.

AR at 70-71.

As the ALJ determined, the only remaining conditions from which Plaintiff continues to suffer are his hypertension and morbid obesity, neither of which either singly or in combination rendered Plaintiff unable to perform SGA based on records from Plaintiff's primary care providers.  AR at 12 (citing AR at 269-85, 311-25, and 518-32).  This is consistent with Plaintiff's hearing testimony that as of the ALJ hearing, Plaintiff's only medication was for high blood pressure, AR at 60-61, and although Plaintiff suffers from morbid obesity and high blood pressure which was starting to cause Plaintiff to experience early stage renal insufficiency, AR at 59-60, Plaintiff stated his most significant medical condition was nerve damage affecting his lower back and causing a tingling sensation in his left leg and foot.  AR at 55-57.

Nor is the ALJ's determination that Plaintiff is capable of a limited range of "light work" inconsistent with the January 25, 2016 consultative examination of Mohammed Zaman, M.D. ("Dr. Zaman"), as Plaintiff asserts, that Plaintiff had moderate limitations in lifting and carrying and should avoid activities causing more than mild exertion because of the bullet fragments lodged near Plaintiff's heart.  Plaintiff's Memorandum at 12-13 (citing AR at 292-95).  Rather, moderate limitations in lifting and carrying are consistent with light work as defined in the regulations.  *See* 20 C.F.R. § 404.1567(b) (defining "light work" as involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . "); *Gurney v. Colvin*, 2016 WL 805405, at *3 (W.D.N.Y. Mar. 2, 2016) (holding "moderate limitations in lifting and carrying are consistent with the ability to perform 'light work'").

Accordingly, the ALJ's decision establishes that, contrary to Plaintiff's assertion, Plaintiff's Memorandum at 13-14, the ALJ did not "cherry-pick" the evidence for a few

minimal findings supporting medical improvement rendering Plaintiff no longer eligible for disability benefits.

Plaintiff also questions the ALJ's selection of June 7, 2016, as the benefits termination date given the record is devoid of any treatment records for that date and no other evidence in the record points to this specific date as the date Plaintiff experienced medical improvement.  Plaintiff's Memorandum at 13-14.  In opposition, Defendant explains the cessation date is based on agency regulations and policy, specifically, 20 C.F.R. § 404.1594(g)(2) and SSR[6] 13-3p ("SSR 13-3p"), requiring no further explanation by the ALJ.  Defendant's Memorandum at 21-22.  Plaintiff does not present any further argument on this point.

As relevant, 20 C.F.R. § 404.1594(g)(2) provides that the earliest the agency can find a disability has ceased is the month in which the evidence shows the claimant is no longer disabled.  More specifically, pursuant to SSR 13-3p, a disability cessation date is the date of the adjudicator's determination or decision without regard to subsequent administrative review.  Here, the SSA's initial cessation of disability determination was made on June 6, 2016, AR at 118, with the notice mailed to Plaintiff on June 7, 2016. AR at 128-32.  As such, the date of the initial disability cessation determination is June 7, 2016.  Accordingly, the ALJ's selection of June 7, 2016 as the disability cessation date and thus the benefits termination date was not arbitrary but, rather, supported by applicable regulations and policy.

---

[6] "SSR" refers to Social Security Rulings which are agency rulings "published under the authority of the Commissioner of Social Security and are binding on all components of the Administration.  These rulings represent precedent final opinions and orders and statements of policy and interpretations that [the SSA] ha[s] adopted."  20 C.F.R. § 402.35(b)(1).

Nor did the ALJ improperly weigh the medical evidence of record as Plaintiff argues, by assigning little weight to the opinion of consultative examiner Dr. Zaman, in favor of Physical Residual Functional Capacity Assessments completed on June 6, 2016, by state agency review physicians S. Siddiqui, M.D. ("Dr. Siddiqui"), AR at 326-31, and by L. Marasigan, M.D. ("Dr. Marasigan"), AR at 332-37.  Plaintiff's Memorandum at 14-22.  Plaintiff maintains that in giving more weight to the opinions of Drs. Siddiqui and Marasigan, neither of whom physically examined Plaintiff, and less weight to the opinion of Dr. Zaman who did physically examine Plaintiff, the ALJ committed harmful error requiring remand.  Plaintiff's Memorandum at 14-17.

After examining Plaintiff on a consultative basis on January 25, 2016, Dr. Zaman diagnosed Plaintiff with marked obesity, significant past gunshot injury with bullet fragment in heart, hypertension, nerve damage, coccyx (tailbone) pain, and insomnia. AR at 295.  As discussed, Discussion, *supra*, at 12-13, based on the examination and diagnoses, Dr. Zaman opined Plaintiff "has moderate limitations in lifting and carrying. He should avoid activities causing more than mild exertion due to a bullet fragment in his heart," AR at 295, which limitations are consistent with light work.  Similarly, although neither Dr. Siddiqui nor Dr. Marasigan physically examined Plaintiff, both reviewed Plaintiff's medical file and found Plaintiff capable of performing work activities consistent with light work.  AR at 326-37.  Further, insofar as Dr. Zaman opined Plaintiff needed to "avoid activities causing more than mild exertion due to a bullet fragment in his heart," AR at 295, both Dr. Siddiqui and Dr. Marasigan specifically considered this portion of Dr. Zaman's opinion in completing their respective Physical Residual Functional Capacity Assessments, *see* AR at 328 (Dr. Siddiqui), 334 (Dr. Marasigan),

14

yet did not limit Plaintiff to no more than mild exertion.  In fact, the record is devoid of

any other medical evidence corroborating Dr. Zaman's assessment that the bullet

fragment lodged near Plaintiff's heart required Plaintiff to avoid more than "mild

exertion."  This is consistent with reports of Plaintiff's primary care physician, Charles N.

Ippolito, M.D. ("Dr. Ippolito"), who repeatedly encouraged Plaintiff to make lifestyle

changes to improve his blood pressure, noting, for example, Plaintiff was "exercising.

Walking, Jumping jacks," AR at 277 (August 8, 2014), and was "aware of trying to lose

weight thru diet and exercise," AR at 280 (July 17, 2015), and directing Plaintiff to "start

exercise plan, exercise 3 times a week for 60 minutes, by walking on treadmill,

swimming, and circuit training and stretch after workout."  AR at 284 (December 9,

2015).  As such, Dr. Zaman's statement following his consultative examination of

Plaintiff that Plaintiff should "avoid more than mild exertion due to a bullet fragment in

the heart," AR at 295, is inconsistent with the exercise plan recommended by Plaintiff's

treating physician, Dr. Ippolito.  Significantly, the ALJ is permitted to rely on the opinion

of a consultative examiner provided the opinion is supported by and consistent with

other evidence in the record.  *See Camille v. Colvin*, 652 Fed.Appx. 25, 28 (2d Cir.

2016) (consultative physician's report may constitute substantial evidence); *see also

Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (holding it was within the province

of the ALJ to resolve contradictions between the consultative examinations findings and

the consultative examiner's conclusions).  Neither is the ALJ bound to accept a

consultative examining physician's conclusions regarding a claimant's RFC.  *Pellam v.

Astrue*, 508 Fed.Appx. 87, 90 (2d Cir. 2013) (ALJ did not err by failing to adopt

consultative examining physician's conclusions in determining the claimant's RFC

where the physician's findings were inconsistent with other contemporaneous medical records).

Nor is there any merit to Plaintiff's argument, Plaintiff's Memorandum at 22, that the ALJ's characterization of Dr. Zaman's opinion as "vague" with regard to Plaintiff's need to avoid "more than mild exertion" AR at 14, necessitating the ALJ re-contact Dr. Zaman to further develop the record in light of Plaintiff's *pro se* status.  Rather, an ALJ is required to re-contact a medical source only where there are gaps in the record. or the record is inadequate to support a decision.  *See Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (requiring ALJ to develop record, even for *pro se* plaintiff, only where there are gaps in the records rendering the record incomplete and unable to support a disability decision).  Here, as discussed, the record is replete with medical evidence supporting the ALJ's decision affirming the termination of Plaintiff's disability benefits based on medical improvement.

Accordingly, substantial evidence in the record supports the weight the ALJ gave to the various physicians in evaluating Plaintiff's medical improvement and RFC.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 9) is DENIED; Defendant's Motion (Dkt. 11) is GRANTED.  The Clerk of Court is directed to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      January 21st, 2021
            Buffalo, New York

16